State, use of Edwards *vs.* Hall et al.

(Decided November 18th 1864.)

---

STATE OF MARYLAND, USE OF JOHN T. EDWARDS, ADM'R OF JOHN SWAN *vs.* WILLIAM HALL ET AL.

ACT OF 1831, CH. 85, ACT OF CONGRESS OF 1832, CH. 153, RELATING TO THE NATIONAL ROAD.—In interpreting such a contract "as is presented by these Acts, the character of the parties, the relations in which they stand to each other, and the objects evidently had in view must be all considered."—The true meaning and intention of the parties would hardly be carried out if the contract were treated as one between individuals, bargaining with each other with adverse interests, and subject to the same strict and technical rules of construction as are appropriate to cases of that description.

State, use of Edwards *vs.* Hall et al.

In view of the above rule there is scarcely room to doubt that the whole matter contemplated by Congress and the Legislature in the passage of these Acts, as the subject of compact, was the preservation and repair of that part of the National Road within the limits of the State of Maryland, by imposing tolls sufficient for that purpose, reserving the privilege of free transportation for the mails and property of the United States, without intending to restrict the State to the special agencies provided by the Acts for securing the ends had in view.

ACTS OF 1852, CH. 129, AND 1860, CH. 1, AND CODE, ART. 1, SEC. 1.—The compact established by the above Acts was not violated by the Act of 1852, ch. 129, which presents all the essential characteristics of a private Act, and vested a right which under Code, Art. 1, sec. 1, was not impaired by the Act of 1860, ch. 1, adopting the Code.

PLEADINGS: DEMURRER.—Where a demurrer goes to the sufficiency of a plea, as a whole, and it appears that one of the several essential grounds of demurrer is insufficient, the demurrer cannot be sustained.

APPEAL from the Circuit Court for Allegany County:

This was an action brought on the 18th day of September 1861, upon the bond of William Hall as Superintendent of that part of the National Road within the limits of the State of Maryland, executed on the 12th of May 1860, with the other appellees as his sureties, to recover twenty-five per cent. of the gross receipts of the road, under the Act of 1852, ch. 129. The declaration recites in full this Act of Assembly.

The defendants pleaded:

1st. That the Act of Maryland of January 23rd 1832, ch. 85, was a compact between Maryland and the United States, which Maryland could not change or alter, and that therefore the suit could not be sustained.

2nd. That the Act of 1852, ch. 129, was repealed by the adoption of the Code.

3rd. This plea, after setting out the sums of money received by the defendant, Hall, avers that after paying the salaries of the gate-keepers and his own, he expended the balance of the money in repairs on the road.

4th. That no recovery can be had for breaches after the 12th of May 1861, because by the Act of January

23rd, 1831, ch. 85, sec. 11, the bond was to be approved by the Judge of the Fifth Judicial District; and that there can be no recovery for the breaches occurring between the 12th of May 1860, and the 12th of May 1861, because the Act of 1852, ch. 129, was null and void, in that it violated the contract made by the adoption of the Act of January 23rd 1832.

5th plea. That by the 11th sec. of the Act of January 23rd 1832, it was enacted that the Superintendent should give bond annually, to be approved by one of Judges of the Fifth Judicial District, and "that said bond was not approved by any Judge of the Fifth Judicial District of Maryland."

The 6th plea is substantially the same as the 3rd.

To these pleas the plaintiff demurred. The Court below (WEISEL, J.,) sustained the demurrer to the 5th plea, but overruled it as to the other pleas, and held them sufficient to bar the action; and the judgment on the demurrer being for the defendant, the plaintiff appealed. For a further statement of the case see the opinion of this Court.

The cause was argued before BARTOL, GOLDSBOROUGH, and COCHRAN, J.

*Thomas J. McKaig*, for the appellant argued:

1st. That the sole object of the Act of January 23rd 1832, was the preservation and repair of the road, and full power for that purpose was given to the State of Maryland by that Act, which transferred the road to the State.

2nd. The prohibition contained in the 13th sec. "That no change, alteration or amendment shall ever be adopted, that will in any wise defeat or affect the true intent and meaning of this Act," pre-supposes that all and every Act which provides for the repair of the road, or the payment for the repairs when made, is within the power conferred by that Act.

3rd. That by the 12th sec. it is clear that the contracting parties contemplated that the money received and the repairs, might not at all times amount to the same sum. It is therefore as much within, "the true intent and meaning of the Act, that the Legislature of the State might provide for the payment of the repairs after they were made, as to apply the surplus tolls to the payment of repairs after the surplus had been paid into the State treasury."

4th. There is no provision in the Act of January 23rd 1832, either imperative or directory, which forbids the State of Maryland from making repairs faster than the tolls received will pay; nor is there any prohibition on the State from paying for repairs out of the tolls, after the repairs have been made; nor is there any prohibition that the Superintendent shall not pay for current repairs unless the current "tolls will be sufficient; such prohibitions would be contrary to the true intent and meaning of the Act."

5th. It is within the true intent and meaning of the Act, that the Legislature should ascertain the value of the repairs made, and provide for their payment, which is all that is done by the Act of 1852, ch. 129.

6th. The defence in this case is based on the supposition, that the State under "the compact," could not provide for the payment of repairs already made, out of the tolls, as they thereafter should be received, and yet claims that the gate-keeper at gate No. 1, has a right to retain out of the tolls, $250 per annum, when the 8th sec. of "the compact," says "it shall never exceed $200," and this provision is not directory but prohibitory.

7th. The construction of the powers in "the compact," given to the State by the defendants, would render it impossible to preserve the road; if a bridge or a culvert were to give way just after pay day had passed, and there were

no tolls on hand, and neither the State nor Superintendent had any right to anticipate the tolls, the bridge or culvert could not be put up, and no tolls could be received until it was put up.

8th. The Act of January 23d 1832, had for its great object, "the preservation and repair" of that great work, and to accomplish that object the road was transferred to the State of Maryland, or in the expressive words of the Act, "taken under the care of the State of Maryland." Except in certain cardinal particulars, the provisions of the Act were merely directory, so "that no change, alterations or amendment shall ever be adopted, that will in any wise defeat or affect the true intent and meaning of this Act," the mode, manner and terms of the application of the money secured for the tolls, to the repair and preservation of the road were left "under the care of the State of Maryland."

9th. That the provisions of the Act of 1852, ch. 129, which provided for the payment to John Swan's adm'r of the debt due to him for repairs done to the road, and by him paid, were not repealed by the Code, but were expressly excepted by Article 1, section 1.

10th. That William Hall was appointed Superintendent, and filed the bond sued upon. That he filed the bond under the provision of the Act of January 23rd 1832, which said bond was good for three years, by the 1st sec. of that Act, which required the Superintendent to be appointed for three years, that the Act of 1844, ch. 28, which directed that he should be appointed annually, did not require a bond annually, and that the bond is liable for the whole of the three years; whether he is to be considered as holding his place for three years or only for one year; if he holds the position more than one year and not more than three years, then the bond is liable in this action, for three years from the date of his appointment.

11th. In cases of bonds given to the State, the uniform practice in this State has been to institute the suit in the name of the State, and to endorse on the writ and declaration the names of the parties for whose use and benefit it is prosecuted. *Ing & Mills vs. State, use of Lewis & McCoy,* 8 *Md. Rep.,* 295.

*George A. Pearre,* for the appellees.

The first question to be discussed, is the validity of the Act of 1852, ch. 129.

The appellees contend, that that Act is unconstitutional, because in violation of the contract made by the Act 1831, ch. 85, and the Act of Congress of 1832, ch. 153, and the appropriation Act of Congress approved the 3rd July 1832, which gave effect to the condition prescribed by the 13th sec. of 1831, ch. 85.

The Act of 1831, ch. 85, has, by this Court, been declared to be a compact between the State of Maryland and the United States. *Achison vs. Huddleson,* 7 *Gill,* 177. 12 *Howard,* 293. In this last case the judgment of this Court in 7 *Gill,* was reversed, but the compact was even more fully declared and sustained. The terms of that compact this Court have said, are to be found in the Act of 1831, ch. 85. By the terms of the compact, as contained in sections 4 and 12 of that Act, the superintendent was constituted a special agent to apply the net amount of the tolls to the preservation and repair of the road. He has no authority whatever to create a debt against the road, but could only expend the net tolls received. The compact does not authorize the superintendent to make repairs in advance of the tolls received, and pledge the future tolls of the road to the payment of such repairs. The Act contemplates no debt whatever upon the road, and authorizes no work to be done upon it, except that which is to be paid for out of the net tolls in hand. If a surplus accumulated, it was to be devoted to the

preservation, repair and improvement of the road.   The Court will observe, that this word "improvement," in the 12th section, is added to the words "preservation and repair," which are used in the 4th section.   The word "improvement" means to make better, and is more extensive than the words "preserve and repair."   Now the Act of 1852, ch. 129, clearly violates the compact contained in the Act of 1831.   In the first place, it directs the superintendent to pay over to the estate of John Swan, 25 per cent. of the gross receipts of the road. Now, even upon the supposition that this payment were for repairs, it violates the Act of 1831, which directs that the net tolls upon the road shall be applied to the repairs.   Under the provisions of the Act of 1852, if the tolls received were small, the 75 per cent. left after the payment made to Swan's estate, might be insufficient to pay the superintendant and toll gatherers.

But the Act of 1852, directs the superintendent to pay money to the administrator of John Swan, deceased, under the idea that the road was indebted to John Swan. We have seen that by the Act of 1831, the road could not be a debtor to any body.   The declaration by the Legislature in the Act of 1852, that the road was indebted unto John Swan, or was found to be indebted to John Swan, by certain auditors appointed by the commissioners of Allegany County, could not create such an indebtedness on the part of the road, when the terms of the compact, made by the State with the United States, rendered the creation of such a debt impossible.

The legislative declaration cannot make the debt good against the road, because the compact declared that no debt should be created.   The road was not a corporation. It had no agents.   It could therefore create no debt.

The State and United States, agree by the first section of the compact, that a superintendent shall be appointed to manage the affairs of the road; in the manner and

with the powers distinctly set out in other sections of the compact. No power is given to him to create debts against the road, either expressly or by implication.

The State cannot add to his powers without the consent of the United States. The only alteration which the Legislature can make in his compact, is provided for in the 13th section thereof, which empowers the Legislature to change, alter or amend the Act so as to regulate the amount of tolls. There is no power to alter any other portion of the Act. The amount of the tolls is all that can be altered. The application of the tolls cannot be changed.

The Act of 1852 is unconstitutional. It is the right of the superintendent for the time being, to judge of the necessary repairs, and then disburse the money therefor under his own regulations.

Again, it must not be *assumed* that the sum directed by the Act of 1852, to be paid to the administrator of John Swan, was even for money expended by him in the repair or preservation of the road. The Act does not so state.

There is no authority contained in the compact by which Jacob Fechtig, Wm. Frost and Joseph Logston, were empowered to ascertain and determine the character of the indebtedness of the National Road to John Swan. All the proceedings recited in the Act of 1852, as well by the commissioners of the county and the auditors, as the Act itself, were usurpations of authority upon the rights and duties of the superintendent for the time being, and therefore in violation of the compact between the State and the United States. The Act of 1852, ch. 129, is in violation of the 3rd section of the compact, which provides that semi-annually the superintendent shall lay before Allegany County Court an account of tolls received and moneys disbursed for repairs, which, when ratified and confirmed, he shall publish.

As a public *agent*, acting for the State, Swan could contract no debt against the State or road, nor would he be liable to any one for repairs beyond the net tolls received by him. *Paley on Agency*, 376, 377. 2 *Kent's Com.*, 633. If Swan therefore, paid out of his own pocket, any money for repairs of the road beyond the net tolls received, he paid the money in his own wrong, and not even an *equity* is created as against the road or State, much less a legal liability.

If the State held the road free of any compact, there would be no obligation on it to indemnify Swan out of the general treasury of the State, but holding the road under the compact, it has not power to appropriate the funds of the road to a purpose different from that to which they are pledged by the compact.

The validity of the 3rd and 6th pleas, depends in a great measure upon the constitutionality of the Act of 1852, above discussed. For if that Act is invalid, the pleas are good. If valid, then of course the pleas are not good. These pleas are similar in principle, the one covering the whole period in the declaration, the other covering one year from the giving of the bond.

The 2nd plea is that the Act of 1852, ch. 129, was repealed by the law adopting the Code, which repealed all public general laws and all public local laws, not codified. It is contended upon the part of the plaintiff that this is a private Act, and therefore not repealed. Its title shows it to be a public Act. Its provisions also affect the public interests, as it diverts money, which should be applied to the repair of a great public road, in which the whole people of the United States are interested, for the benefit of a private individual. So that both by its title and its provisions, it is a public law.

These laws are much more public in their character than the charter of the Havre de Grace Bank, which this Court in 6 *H. & J.*, 52, decided to be a public law.

The 4th plea is that the bond was only responsible for one year. The 11th section of the compact provides that the superintendent shall give an annual bond. This provision is as much of the compact as any other provision of it. It is well known by common experience in this country, that a bond good when given, may be totally worthless at the end of a year. The United States might well require of the State of Maryland, that there should be a strict compliance with this provision of the compact, in order that the safety of the public funds in the hands of the superintendent, might be fully secured by a renewal and approval of his bond at intervals of a year. Besides this the sureties must be presumed to have looked to the compact requiring an annual bond, at the time they executed the bond of the 12th May 1860. They contemplated a responsibility for only one year, as the law itself fixes the continuation of the bond for that period. *Union Bank of Maryland vs. Ridgely*, 1 *H. & G.*, 324–432.

It makes no difference that other laws were passed, requiring the superintendent to give a bond every two years, if such laws were invalid, for in contemplation of law the defendants only looked to valid laws, when they signed the bond, and not to invalid laws, which are no laws at all. See also *Arlington vs. Merrick*, 3 *Saunders*, 412.

Another point remains to be stated, which is however not raised by the pleadings, but which appears upon the face of the pleadings. Edwards, as the administrator of Swan, had no right to bring suit in the name of the State on this bond. Neither the Act of 1852, ch. 129, contained any such authority, nor any other Act of Assembly. Without such legislative authority no party has a right to bring a suit in the name of the State. In a case like this, no authority can be presumed by the Court to have been given by the Legislature to the administrator

of Swan. The reason is that such authority would be contained in a public law, of which the Court must officially take notice, and of the non-existence of which the Court must take notice. Such law would appertain to the administration of the National Road, and as we have seen would therefore be a public law. The case in 10 *Wheaton,* 406, *Corporation of Washington vs. Young,* is conclusive upon this subject.

COCHRAN, J., delivered the opinion of this Court.

This suit was brought on a bond to the State, executed on the 12th of May 1860, by William Hall, with the other appellees as sureties, by which he became bound to appropriate, as directed by law all moneys he should receive as Superintendent of that part of the United States' Road lying within the limits of the State of Maryland—the appeal having been taken from a judgment overruling a demurrer to the 1st, 2nd, 3rd, 4th and 6th pleas of the appellees.

The disposition of the case depends on the construction of the Act of 1831, ch. 85, and the subsequent Congressional Act of 1832, ch. 153. It was conceded on both sides that these Acts constitute a compact between the State of Maryland and the United States, the object and purpose of which was to transfer to the care of this State, that portion of the National Road within its limits, on the undertaking of the State to preserve and keep the same in proper repair. The appellees, however, go further and insist, as in effect they have pleaded, that the special agencies and means proposed in the Act of 1831, for keeping the road in repair, are subject-matters of the compact, and therefore not within the power of either party to modify or change them without the consent of the other. On this ground, they assumed that the Act of 1852, ch. 129, which directs the payment of the sum of money sought to be recovered in this case, operates as an infraction of the

compact; and the demurrer to their first plea, held to be sufficient by the Court below, raises the question as to the constitutionality of that Act. Other subordinate questions are presented by the several pleas which we shall notice in their order.

The rule proper to be observed in construing the Legislative and Congressional Acts of 1831 and 1832 for the purpose of ascertaining the nature and extent of the compact entered into, was very clearly enunciated by the Supreme Court in *Seawright vs. Stokes*, 3 *How.*, 151, and *Neil, Moore & Co. vs. State of Ohio, Id.*, 720. In delivering the opinion of the Court in the first of these cases, the late Chief Justice said, that in interpreting such a contract as that presented by these Acts: "The character of the parties, the relations in which they stand to each other, and the objects they evidently had in view must all be considered;" that "the true meaning and intention" of the parties would hardly be carried out if the contract were "treated as one between individuals bargaining with each other, with adverse interests," and subject to the "same strict and technical rules of construction as were appropriate to cases of that description." Here, as there, the United States and a State were the contracting parties, neither interested adversely to the other, and both moving with the common purpose of advancing and subserving the general interest and convenience of the public. Looking, then to the question before us, from the stand-point prescribed by these considerations, and taking the rule above stated for our guide, there is scarcely room to doubt that the whole matter contemplated by Congress and the Legislature in the passage of these Acts as the subject of compact, was the preservation and repair of that part of the National Road within the limits of this State, by imposing tolls sufficient for that purpose, reserving the privilege of free transportation for the mails and property of the United

States. This was the substantial end proposed by the Act of 1831, and in view of the general public interest represented by Congress, it is reasonable to suppose that it was assented to for the purpose of realizing that result, without intending to restrict the State to the special agencies provided by the Act for securing it; and more especially would this appear to be the true relation of the high contracting parties, when we come to consider that a literal compliance with the terms of the Act might not effect, or would operate to defeat the purpose intended. The proper care and repair of the road by the imposition of tolls was the end to be obtained, and in view of that purpose, it would seem scarcely possible to maintain, successfully, that the Superintendent could contract no debt for repairs on the credit of future tolls, because he was not specially authorized by the terms of the Act to do so. Suppose on that construction of his powers, that upon the exhaustion of the tolls in hand by repairs at any given time, the road should then become impassable, by injuries from sudden freshets or floods, requiring extensive and costly repairs to fit it again for travel, a case would be presented where the Superintendent would be bound to contract debt on the credit of tolls to accrue, or permit the main purpose of the compact to fail; for if the road were to continue impassable, no tolls would be collected, and without tolls there could be no repairs. The opinion we have indicated finds some support in a provision contained in the Act itself. A clause found in the 13th section declaring "that no change, alteration or amendment shall be adopted, that will in any wise defeat or affect the true intent and meaning" of the Act, clearly implies power on the part of the Legislature to adopt any measure consistent with and in furtherance of that "intent and meaning;" and that, as we understand it, was the character and design of the Act of 1852, the sole purpose of which was to set apart and appropriate a portion

of the accruing tolls to the payment of the debt for pre-vious repairs and expenses incident to the management and preservation of the road. In view of the peculiar nature and circumstances of the case, we have no hesita-tion in expressing the opinion that the compact estab-lished by the Acts in question was not violated by the Act of 1852. And we may further add in this connection that the latter Act, in providing for, and directing the payment of the debt found by the Legislature to be due from the road presents all the essential characteristics of a private Act; and that in vesting the administrator of Swan with the right to demand and have payment of the debt so found to be due, it vested a right which under the Code, Art. 1, sec. 1, was not impaired by the Act of 1860, adopting the Code. For this reason also, the 107th and 111th secs. of Art 1, of the Code of Public Local Laws, relied on in the 6th plea, must be construed and held to take effect subject to the provisions of the Act of 1852, without regard to the amount of compensation thereby allowed to the Superintendent and toll gatherers, or other directions therein given as to the use to be made of the tolls. The necessary conclusion from these views is, that none of the matters pleaded in the 1st, 2nd, 3rd and 6th pleas were sufficient to bar the appellant of his right of action.

The question raised by the demurrer as to the suffi-ciency of the 4th plea, is of a somewhat different charac-ter. Like the other pleas this is a special one in bar of the right of action stated in the declaration; that is of the right to recover on the alleged breaches of the condition of the bond declared on, occurring between the 12th of May 1860, the date of the bond, and the 18th of Septem-ber 1861, when the suit was brought. The special mat-ter alleged in this plea is, 1st. that by the terms of the Act of 1831, the bond declared on was an annual bond, on which no action could be maintained for breaches

occurring after the 12th of May 1861, although the terms of the condition would bind the appellee, Hall, to appropriate all tolls received by him as directed by law, without regard to the time of receiving them; and 2nd. that the Act of 1852, directing a portion of the tolls to be paid to the appellant, was a violation of the compact and void, and for that reason that no action could be maintained for breaches of the condition occurring between the 12th of May 1860, and the 12th of May 1861. As these propositions are presented, it is scarcely necessary to say that it is material that both of them should be sustained as matter of law, to constitute the plea a good one. It cannot be pretended that the first by itself, would operate as a bar to the right of action stated in the declaration, and the failure of the last, which in fact we have already decided, necessarily renders the plea defective. It must be observed that the question raised by the demurrer goes to the sufficiency of the plea as a whole, and that we are required to decide nothing more. In our opinion, the demurrer to all the pleas should have been sustained and judgment entered thereon for the appellant; but as an inquisition for the assessment of damages will be necessary, we shall, as was done in the case of *Neale vs. Clautice,* 7 *H. & J.*, 372, remand the cause under a *procedendo.*

*Judgment reversed, and procedendo awarded.*

(Decided November 25th 1864.)